J-A11039-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| SEAN PATRICK SELLERS | : | |
| | : | |
| Appellant | : | No. 1122 MDA 2016 |

Appeal from the Judgment of Sentence March 3, 2016
In the Court of Common Pleas of Franklin County
Criminal Division at No(s):  CP-28-CR-0000339-2014

BEFORE:   SHOGAN, MOULTON, JJ., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:                    **FILED JULY 31, 2017**

Appellant, Sean Patrick Sellers, appeals from the judgment of sentence entered by the Court of Common Pleas of Franklin County after a jury convicted him of Criminal Attempt, First Degree Murder, and other offenses occurring on the day the 16 year-old stole a firearm, a vehicle, and later fired multiple gunshots at a Pennsylvania State Trooper during a routine traffic stop.   Appellant challenges the court's order denying his pretrial motion to decertify the case to the juvenile system and its exercise of discretion in imposing standard range sentences, run consecutively, to form a 14-year aggregate sentence.  We affirm.

---

[*] Former Justice specially assigned to the Superior Court.

The trial court aptly summarizes the procedural history of the present matter as follows:

The instant matter stems from a routine traffic stop that occurred on January 26, 2014. On that date, Trooper Donn Reid of the Pennsylvania State Police filed a Police Criminal Complaint alleging the Defendant [hereinafter "Appellant"] committed a number of offenses, including Attempt Murder of the First Degree.

On March 24, 2014, the Commonwealth filed an Information charging Appellant with nine counts. These counts included Criminal Attempt Murder of the First Degree, Criminal Attempt—Murder of a Law Enforcement Officer, Aggravated Assault—Attempted Serious Bodily Injury, Aggravated Assault—Attempt to Put Enumerated Officials in Fear, Simple Assault—Bodily Injury Attempted, Recklessly Endangering Another Person, Firearms Not to Be Carried Without a License, and two counts of Theft.[fn]

---

[fn] 18 Pa.C.S. §§ 901(a) to 2502(a), 901(a) to 2507(a), 2702(a)(1), 2702(a)(6), 2701(a), 2705, 6106(a)(1), and 3921(a), respectively.

---

On October 6, 2014, Appellant, through counsel, filed a Motion to Transfer Case to Juvenile Division. On October 8, 2014, the court[] entered an Order directing the Commonwealth to respond within 14 days. On October 20, 2014, the Commonwealth filed a Motion for Extension of Time to File Answer, which the court granted on October 24, 2014. On November 5, 2014, the Commonwealth filed its Answer to Defendant's Motion to Transfer Case to Juvenile Division. . . . On December 10, 2014, the court entered an Order setting a hearing on Appellant's Motion to Transfer Case to Juvenile Division for January 29, 2015.

On January 21, 2015, Appellant filed a Motion for Pre-Hearing Conference on Transfer Motion, which the court granted on January 22, 2015; a Pre-Hearing Conference was held on January 29, 2015. The court held the Pre-Hearing Conference as scheduled and rescheduled the transfer hearing for Friday, March

13, 2015. On March 11, 2015, Appellant filed a Joint Motion for Pre-Hearing Review of Exhibits which the court granted on March 12, 2015. The court held the hearing on the Transfer Motion as scheduled on March 13, 2015. On March 16, 2015, the court entered an Order denying Appellant's Motion to Transfer Case to Juvenile Division.

After a number of continuances and other collateral motions, this matter was scheduled for trial by jury. The trial was held as scheduled on Wednesday, January 20, 2016. On January 21, 2016, during the second day of the trial, Appellant ple[d] guilty to [Firearms Not to be Carried Without a License and two counts of Theft]. At the conclusion of the evidence on January 21, 2016, the jury returned verdicts of guilty on the remaining six counts.

On March 3, 2016, Appellant was sentenced to an aggregate period of incarceration of 168 to 344 months in a state correctional institute. On the same date, the court granted Steve Rice, Esq., leave to withdraw from the matter and appointed the Franklin County Public Defender's Office to represent Appellant. On March 8, 2016, Appellant, through counsel, filed a Motion for Extension of Deadline to File Post-Sentence Motions, which the court granted on March 9, 2016.

On April 4, 2016, Appellant filed a Post-Sentence Motion for Modification of Sentence[, which the court denied on June 15, 2016.]

On July 11, 2016, Appellant filed a Notice of Appeal. On July 12, 2016, the court entered an Order directing Appellant to file a concise statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b).

…

On July 26, 2016, Appellant filed a timely Concise Statement of Matters Complained of on Appeal[, and, on August 22, 2016, filed a court-approved amended concise statement raising the two issues presented here on appeal.]

Trial Court Opinion, filed 8/25/15, at 2-6.

Appellant presents the following questions for our review:

- 3 -

I. **DID THE TRIAL COURT ABUSE ITS DISCRETION WHEN IT SENTENCED APPELLANT TO AN AGGREGATE SENTENCE OF 168 TO 344 MONTHS IN A STATE CORRECTIONAL INSTITUTION, WHICH IS AT THE TOP OF THE STANDARD RANGE OF SENTENCES FOR EACH CRIME AND FAILS TO CONSIDER THE MITIGATING FACTORS PRESENT IN THIS CASE SUCH AS APPELLANT'S AGE AT THE TIME OF THE OFFENSE AND APPELLANT'S LACK OF A PRIOR CRIMINAL RECORD?**

II. **DID THE TRIAL COURT ABUSE ITS DISCRETION WHEN IT DENIED APPELLANT'S MOTION TO TRANSFER CASE TO JUVENILE DIVISION BECAUSE APPELLANT PROVIDED THE COURT WITH SUFFICIENT EVIDENCE TO MEET HIS BURDEN OF PROOF BY A PREPONDERANCE OF THE EVIDENCE THAT TRANSFER IS APPROPRIATE BECAUSE HE WOULD BE AMENABLE TO TREATMENT, SUPERVISION OR REHABILITATION AS A JUVENILE?**

Appellant's brief at 18.

When appealing the discretionary aspects of a sentence, an appellant must invoke the appellate court's jurisdiction by including in his brief a separate concise statement demonstrating a substantial question as to the appropriateness of the sentence under the Sentencing Code. *Commonwealth v. Mouzon*, 571 Pa. 419, 812 A.2d 617 (2002); Pa.R.A.P. 2119(f). "The determination of what constitutes a substantial question must be evaluated on a case-by-case basis." *Commonwealth v. Anderson*, 830 A.2d 1013, 1018 (Pa.Super. 2003). A substantial question exists "only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie

- 4 -

the sentencing process." ***Commonwealth v. Sierra***, 752 A.2d 910, 912–13 (quoting ***Commonwealth v. Brown***, 741 A.2d 726, 735 (Pa.Super. 1999) (*en banc*).  A bald allegation of excessiveness does not present a substantial question.  ***Mouzon***, ***supra***.  Additionally, a court's refusal to weigh proposed mitigating factors as the defendant wishes, absent more, does not raise a substantial question.  ***Commonwealth v. Moury***, 992 A.2d 162 (Pa.Super. 2010).

> Moreover:
> Long standing precedent of this Court recognizes that 42 Pa.C.S.A. section 9721 affords the sentencing court discretion to impose its sentence concurrently or consecutively to other sentences being imposed at the same time or to sentences already imposed. ***Commonwealth v. Graham***, 541 Pa. 173, 184, 661 A.2d 1367, 1373 (1995)....  Any challenge to the exercise of this discretion ordinarily does not raise a substantial question. ***Commonwealth v. Johnson***, 873 A.2d 704, 709 n. 2 (Pa.Super. 2005); ***see also Commonwealth v. Hoag***, 665 A.2d 1212, 1214 (Pa.Super. 1995) (explaining that a defendant is not entitled to a 'volume discount' for his or her crimes).

***Commonwealth v. Gonzalez-Dejusus***, 994 A.2d 595, 598 (Pa.Super. 2010).

Appellant received top-end standard range sentences, which the court ran consecutively, resulting in an aggregate sentence of 168 to 344 months' incarceration.  He was 18 years, 4 months old at the time of sentencing.  He will be 32 when he is first eligible for release from prison.

In Appellant's Pa.R.A.P. 2119(f) statement, he challenges the court's exercise of discretion where he had no prior history of violent offenses, his victim escaped serious injury, a medical expert opined that he was amenable

to rehabilitation, and the pre-sentence investigation report recommended an aggregate sentence of 105 to 210 months. He maintains, further, that the court's significant departure from the PSI recommendation, which considered various mitigating factors, reflected the court's failure to consider the nature and circumstances of the offense and the history and characteristics of the defendant, such that the sentence runs contrary to fundamental sentencing norms.

We hold that, under the circumstances, Appellant has presented a substantial question for review. *See, e.g., Commonwealth v. Parlante*, 823 A.2d 927, 929–930 (Pa.Super. 2003) (holding allegations that court imposed disproportionate sentence and did not consider proper sentencing factors raised substantial question). Therefore, we consider the merits of Appellant's appeal of the discretionary aspects of his sentence.

Though adequate to raise a threshold-level substantial question for our review, Appellant fails to show that the trial court's standard range sentences were inconsistent with the gravity of the offense, the protection of the public, or Appellant's rehabilitative needs. With respect to the last sentencing consideration, Appellant argues that the court altogether disregarded Appellant's rehabilitative needs.

The record, however, belies Appellant's claim. At sentencing, the court's observations, stated on the record, reflected a consideration of Appellant's individual circumstances, both aggravating and mitigating, before it imposed sentence. *See* N.T., Sentencing Hearing, pp. 31-36. The court

acknowledged having the benefit of the PSI report and listened to Appellant's statement to the victim and to the court. It noted his difficult childhood and his commendable efforts to improve himself during his lengthy pre-trial incarceration.

On balance of all considerations, the court determined that a fourteen-year sentence comprising consecutively run sentences was fair and reasonable, and we discern no abuse of discretion in that conclusion. We note, further, that the imposition of consecutive, standard range sentences do not amount to a virtual life sentence, as Appellant will be eligible for parole at age 32.[1]

Next, Appellant assails the court's order denying his motion for decertification to juvenile court. We observe that trial courts have broad discretion in determining whether to grant decertification, and this Court will not reverse that determination absent a "gross abuse of discretion." *Commonwealth v. Ruffin*, 10 A.3d 336, 338 (Pa.Super. 2010).

_____

[1] To the extent Appellant's discretionary aspects argument focuses exclusively on the imposition of consecutive sentences, we refer to our well-settled jurisprudence, *cited* supra, that a sentencing court has discretion to impose consecutive sentences, 42 Pa.C.S.A. § 9721, and that "the imposition of consecutive, rather than concurrent, sentences may raise a substantial question in only the most extreme circumstances, such as where the aggregate sentence is unduly harsh, considering the nature of the crimes and the length of imprisonment." *Commonwealth v. Lamonda*, 52 A.3d 365, 372 (Pa.Super. 2012). Moreover, the imposition of an aggregate minimum sentence of 14 years is not manifestly excessive given the totality of circumstances present in the instant case.

Although the Juvenile Act requires that a decertification court consider all of the amenability factors, it is silent as to the weight that should be assessed to each factor. The ultimate decision of whether to certify a minor to stand trial as an adult is within the sole discretion of a decertification court. A decertification court must consider all the facts set forth in § 6355 of the Juvenile Act, but it need not address, seriatim, the applicability and importance of each factor and fact in reaching its final determination.

*Id*.

[A] juvenile seeking decertification has the burden of proving by the preponderance of the evidence that the transfer to juvenile court is warranted. 42 Pa.C.S.A. § 6322; ***Commonwealth v. Cotto***, 562 Pa. 32, 753 A.2d 217 (2000) (the Juvenile Act provides a mechanism for a minor to prove to the court that he does not belong in criminal court via § 6322). "The propriety of whether charges should be prosecuted in the juvenile court or adult court system implicates jurisdictional concerns." ***Hughes***, ***supra***, 865 A.2d at 776. Nonetheless, when the crime involved is one excluded from the Juvenile Act's definition of a delinquent crime, the charge is automatically within the jurisdiction of the criminal court and jurisdiction is presumptively proper. ***Id.*** at 777, ***citing Commonwealth v. Kocher***, 529 Pa. 303, 602 A.2d 1308, 1310 (1992) and ***Commonwealth v. Pyle***, 462 Pa. 613, 342 A.2d 101, 106–107 (1975), ***superseded by statute.***

***Commonwealth v. Shull***, 148 A.3d 820, 842 (Pa.Super. 2016), ***reargument denied*** (Nov. 23, 2016).

Section 6302 of the Juvenile Act excludes attempted murder and aggravated assault from the definition of delinquent act where, as in this case, a deadly weapon was used. 42 Pa.C.S.A. § 6302, "Delinquent Act" (2)(ii)(C) and (2)(iii)(I). Pursuant to § 6322 of the Juvenile Act, therefore, it was presumptively proper to commence prosecution of Appellant's offenses

- 8 -

in the court of common pleas criminal division rather than in juvenile court.

42 Pa.C.S.A. 6322(a).

Section 6322(a) provides, however, that such a prosecution can be transferred from criminal court to juvenile court in some circumstances:

> In determining whether to transfer a case charging murder or any of the offenses excluded from the definition of 'delinquent act' in section 6302, the child shall be required to establish by a preponderance of the evidence that the transfer will serve the public interest. In determining whether the child has so established that the transfer will serve the public interest, the court shall consider the factors contained in section 6355(a)(4)(iii) (relating to transfer to criminal proceedings).

42 Pa.C.S.A. § 6322(a).

In turn, § 6355(a)(4)(iii) provides numerous factors a court must consider in deciding a decertification motion. These factors are:

> (A) the impact of the offense on the victim or victims;
> (B) the impact of the offense on the community;
> (C) the threat to the safety of the public or any individual posed by the child;
> (D) the nature and circumstances of the offense allegedly committed by the child;
> (E) the degree of the child's culpability;
> (F) the adequacy and duration of dispositional alternatives available under this chapter and in the adult criminal justice system; and
> (G) whether the child is amenable to treatment, supervision or rehabilitation as a juvenile by considering the following factors:
> (I) age;
> (II) mental capacity;
> (III) maturity;
> (IV) the degree of criminal sophistication exhibited by the child;
> (V) previous records, if any;

> (VI) the nature and extent of any prior delinquent history, including the success or failure of any previous attempts by the juvenile court to rehabilitate the child;
> (VII) whether the child can be rehabilitated prior to the expiration of the juvenile court jurisdiction;
> (VIII) probation or institutional reports, if any;
> (IX) any other relevant factors; and

42 Pa.C.S.A. § 6355(a)(4)(iii)(A-G).

Simply citing some factors which, standing alone, could support decertification does not establish the gross abuse of discretion required to reverse a court's order refusing to decertify a case. *Cf Commonwealth v. Potts*, 449 Pa.Super. 306, 673 A.2d 956, 958 (1996) (recognizing a gross abuse of discretion is not demonstrated by merely reciting facts of record that would support a result contrary to the court's actual decision.") (citation omitted). "When evaluating the propriety of a certification decision, absent evidence to the contrary, a reviewing court must presume that the juvenile court carefully considered the entire record." *Commonwealth v. Jackson*, 722 A.2d 1030, 1034 (Pa. 1999).

The trial court's Pa.R.A.P. 1925(a) opinion contains a thoughtful and cogent discussion of the Section 6355(a)(4)(iii) considerations it made in reaching its decision to deny decertification. As we discern no gross abuse of discretion in the court's determination, which finds support in the record,[2] we reject Appellant's claim.

---

[2] The decertification hearing took place 14 months after the attempted shooting. Regarding Factor A, concerning the impact on the victim, Trooper

*(Footnote Continued Next Page)*

Judgment of sentence is AFFIRMED.

Quinn described being in a state of shock for a few days after the attempted shooting. After that, he testified, he was in "a continued state of shock [for some time]. Kind of not scared mentality to work but just a fear, a different fear that I'd never felt before….just fearing that happening again on a traffic stop." N.T., Decertification Hearing, at p.8. He also felt isolated from others, a condition he says contributed to his break-up with his fiancee' and caused difficulties with more veteran co-workers. N.T. at 10. He had frequent nightmares, which still occur, but less frequently, 14 months later at the time of his testimony. It affected how he approached vehicles, but he claimed he was getting progressively better to the point now that he no longer experienced fear on the job. N.T. at 20-22.

Regarding Factor E, the Degree of the Child's Culpability, the patrol car video shows that Appellant conduct of firing multiple shots at the uniformed Trooper was unprovoked.

Regarding Factor F, Adequacy and Duration of Dispositional Alternatives in Juvenile and in the Adult Criminal System, the court found "little evidence" that treatment options afforded in the juvenile justice system were unavailable in criminal justice system.

Regarding Factor G, Amenability to Treatment Efforts, the court noted that Appellant's remaining eligibility for juvenile system treatment amounted to only 3 years before he aged out at 21 years old. Dr. Taylor said treatment for that short span of time *may* be effective. She said he would benefit from a lengthy period of time in a "caring, consistent program."

The trial court concedes that Factor G weighed slightly in favor of *granting* Appellant's petition for decertification. However, given the short time available for juvenile system treatment and the severity of Appellant's offenses—"some of the most severe in the law"—the court found Appellant could not meet his burden of proving that decertification was appropriate when all factors were considered. Trial Court Opinion at 16.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 7/31/2017

Filed AUG 25 2016

Clerk

IN THE COURT OF COMMON PLEAS OF THE 39TH JUDICIAL DISTRICT OF PENNSYLVANIA–FRANKLIN COUNTY BRANCH

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | Criminal Action |
| | : | |
| | : | No. 339-2014 |
| v. | : | |
| | : | Attempted Homicide, et. al. |
| SEAN P. SELLERS, | : | |
| Defendant | : | JUDGE JEREMIAH D. ZOOK |

## OPINION PURSUANT TO PA.R.A.P. 1925(a)

Defendant, Sean Patrick Sellers,[1] appeals from the *Orders of Court* entered March 3, 2016,[2] sentencing the Defendant on multiple counts including Criminal Attempt Murder of the First Degree,[3] Criminal Attempt – Murder of a Law Enforcement Officer,[4] Aggravated Assault – Attempted Serious Bodily Injury,[5] Aggravated Assault – Attempt to Put Enumerated Officials in Fear,[6] Simple

---

[1] Defendant is represented by Ian M. Brink, Esq..
[2] By the undersigned.
[3] 18 Pa.C.S. § 901(a) to 18 Pa.C.S. § 2502(a).
[4] 18 Pa.C.S. § 901(a) to 18 Pa.C.S. § 2507(a).
[5] 18 Pa.C.S. § 2702(a)(1).
[6] 18 Pa.C.S. § 2702(a)(6).

Assault – Bodily Injury Attempted,[7] Recklessly Endangering Another Person,[8] Firearms Not to Be Carried Without a License,[9] and two counts of Theft,[10] and the *Order* entered March 16, 2015, denying the Defendant's *Motion to Transfer Case to Juvenile Division.* The Defendant raises two issues on appeal: 1) whether the court abused its discretion in imposing an aggregate sentence of 168 to 344 months in a State Correctional Institute; and 2) whether the court abused its discretion in denying the Defendant's *Petition for Decertification.*

## PROCEDURAL HISTORY[11]

The instant matter stems from a routine traffic stop that occurred on January 26, 2014. On that date, Trooper Donn Reid of the Pennsylvania State Police filed a *Police Criminal Complaint* alleging the Defendant committed a number of offenses, including Criminal Attempt Murder of the First Degree.

On March 24, 2014, the Commonwealth filed an *Information* charging the Defendant with nine counts. These counts included

---

[7] 18 Pa.C.S. § 2701(a).
[8] 18 Pa.C.S. § 2705.
[9] 18 Pa.C.S. § 6106(a)(1).
[10] 18 Pa.C.S. § 3921(a).
[11] As this matter's procedural history is vast, the Court will only address the portions that are relevant to the issues complained of on appeal.

2

Criminal Attempt Murder of the First Degree,[12] Criminal Attempt – Murder of a Law Enforcement Officer,[13] Aggravated Assault – Attempted Serious Bodily Injury,[14] Aggravated Assault – Attempt to Put Enumerated Officials in Fear,[15] Simple Assault – Bodily Injury Attempted,[16] Recklessly Endangering Another Person,[17] Firearms Not to Be Carried Without a License,[18] and two counts of Theft.[19]

On October 6, 2014, the Defendant, through counsel,[20] filed a *Motion to Transfer Case to Juvenile Division.* On October 8, 2014, the court[21] entered an *Order* directing the Commonwealth to respond within 14 days. On October 20, 2014, the Commonwealth filed a *Motion for Extension of Time to File Answer,* which the court[22] granted on October 24, 2014. On November 5, 2014, the Commonwealth filed its *Answer to Defendant's Motion to Transfer Case to Juvenile Division.* On December 2, 2014, the court[23] reassigned this case to the undersigned. On December 10, 2014,

---

[12] 18 Pa.C.S. § 901(a) to 18 Pa.C.S. § 2502(a).
[13] 18 Pa.C.S. § 901(a) to 18 Pa.C.S. § 2507(a).
[14] 18 Pa.C.S. § 2702(a)(1).
[15] 18 Pa.C.S. § 2702(a)(6).
[16] 18 Pa.C.S. § 2701(a).
[17] 18 Pa.C.S. § 2705.
[18] 18 Pa.C.S. § 6106(a)(1).
[19] 18 Pa.C.S. § 3921(a).
[20] At the time the Defendant was represented by Steve Rice, Esq..
[21] By then President, now Senior Judge Douglas W. Herman.
[22] By then President, now Senior Judge Douglas W. Herman.
[23] By then President, now Senior Judge Douglas W. Herman.

the court[24] entered an *Order* setting a hearing on the Defendant's *Motion to Transfer Case to Juvenile Division* for January 29, 2015.

On January 21, 2015, the Defendant filed a *Motion for Pre-Hearing Conference on Transfer Motion*, which the court granted on January 22, 2015; a Pre-Hearing Conference was held on January 29, 2015. The court held the Pre-Hearing Conference as scheduled and rescheduled the transfer hearing for Friday, March 13, 2015. On March 11, 2015, the Defendant filed a *Joint Motion for Pre-Hearing Review of Exhibits* which the court granted on March 12, 2015. The court held the hearing on the *Transfer Motion* as scheduled on March 13, 2015. On March 16, 2015, the court entered an *Order* denying the Defendant's *Motion to Transfer Case to Juvenile Division.*

After a number of continuances and other collateral motions, this matter was scheduled for trial by jury. The trial was held as scheduled on Wednesday, January 20, 2016. On January 21, 2016, during the second day of the trial, the Defendant plead guilty to counts 7, 8, and 9. At the conclusion of the evidence on January

---

[24] This *Order* and all subsequent orders were issued by the undersigned.

21, 2016, the jury returned verdicts of guilty on the remaining six counts.

On March 3, 2016, the Defendant was sentenced to an aggregate period of incarceration of 168 to 344 months in a state correctional institute. On the same date, the court granted Steve Rice, Esq., leave to withdraw from the matter and appointed the Franklin County Public Defender's Office to represent the Defendant. On March 8, 2016, the Defendant, through counsel[25] filed a *Motion for Extension of Deadline to File Post-Sentence Motions*, which the court granted on March 9, 2016.

On April 4, 2016, the Defendant filed a *Post-Sentence Motion for Modification of Sentence.* On April 6, 2016, the court set the matter for hearing on May 13, 2016, which was held as scheduled. On June 15, 2016, the court entered an *Opinion and Order* denying the Defendant's *Post-Sentence Motion for Modification of Sentence.*

On July 11, 2016, the Defendant filed a *Notice of Appeal.* On July 12, 2016, the court entered an *Order* directing the Defendnat to file a concise statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b).

---

[25] The Franklin County Public Defender's Office.

On July 23, 2016, the *Transcript of Proceedings of Post-Sentence Motion Hearing* was filed. On August 7, 2016, the *Transcript of Proceedings Decertification Hearings* (hereinafter "*Tr.*") was filed of record. On August 9, 2016, the *Transcript of Proceedings of Jury Trial (Day One)* and *Transcript of Proceedings of Jury Trial (Day Two)* were filed of record.

On July 26, 2016, the Defendant filed a timely *Concise Statement of Maters Complained of on Appeal* raising two issues: 1) whether the trial court abused its discretion when it sentenced the Defendant to an aggregate sentence of 168 to 344 months in a state correctional institution; and 2) any non-frivolous legal issues that arise from counsel's review of the jury trial transcript.

On August 18, 2016, the Defendant filed a *Motion to Amend Concise Statement of Matters Complained of on Appeal,* which the court granted on August 22, 2016. On August 22, 2016, the Defendant filed an *Amended Concise Statement of Matters Complained of on Appeal.*

## DISCUSSION

### I.    Decertification

In determining whether the child has established by a preponderance of the evidence that the transfer to juvenile court will serve the public interest, the Court must consider the factors listed at 42 Pa.C.S. § 6355(a)(4)(iii). *See Commonwelath v. Thomas,* 67 A.3d 838, 841 – 42 (Pa.Super. 2013); *see also* 42 Pa.C.S. § 6322(a); 42 Pa.C.S. § 6355(a)(4)(iii).

"The ultimate decision of whether to certify a minor to stand trial as an adult is within the sole discretion of a decertification court." *Commonwealth v. Brown,* 26 A.3d 485, 492 – 93 (Pa.Super. 2011). As stated in the Court's *Order* of March 16, 2015, this Court considered all the factors listed at 42 Pa.C.S. § 6355(a)(4)(iii) and found that the Defendant failed to meet his burden of proof by a preponderance of the evidence that a transfer to juvenile court would serve the public interest. When this court made the decision to deny the Defendant's *Motion,* the court considered the testimony of Trooper Michael Quinn of the Pennsylvania State Police, Richard Ackerman of Franklin County Juvenile Probation, and Dr. Amy Taylor. The Court also considered a number of exhibits that were

7

admitted into the record.[26]  The Court found that the Defendant

failed to meet his burden and that the factors weighed in favor of

denying decertification.  As this court's order of March 16, 2015 did

[26] These included  Defendant's Exhibit 1 – the *Assessment for Decertification and Transfer to Juvenile Court* prepared by Dr. Taylor dated September 8, 2014; Defendant's Exhibit 2 – the *curriculum vitae* of Dr. Taylor; Defendant's Exhibit 5 – a DVD-R containing the following items: Audio recording of Trooper Quinn's interview; Transcript of the January 26, 2014 interview of the Defendant by Troopers David Rush and Dan Reed; Transcript of January 29, 2014 interview of Trooper Quinn by Trooper Don [sic] Reed; Audio recording of the January 26, 2014 interview of the Defendant by Troopers David Rush and Dan Reed; Records of the daily observations of the Defendant by staff at the Franklin County Jail; Inmate Summary Report for the Defendant from the Franklin County Jail; Medical Records for the Defendant from the Franklin County Jail; Records for the Defendant from Laurel Creek Counseling; Records for the Defendant from CMSU Behavioral Health and Development Services; Records for the Defendant from CMSU Behavioral Health and Development Services – Outpatient Recovery Services; Medical Records for the Defendant from Family Practice Center, P.C.; Records for the Defendant from The Meadows Psychiatric Center and Universal Community Behavioral Health; The Motor Vehicle Recording (MVR) of the underlying incident from Trooper Quinn's patrol cruiser; Sixteen (16) digital photographs which appear to be of the property items recovered from the vehicle involved in the underlying incident; PSP Evidence Submission Receipt; PSP Forensic Services Evidence Log; PSP Forensic Services Investigation Report; PSP Forensic Services Vehicle Work Sheet; PSP Incident Report; PSP Juvenile Rights Warning and Waiver; PSP Property Record; PSP Public Information Release Report; PSP Waiver of Rights and Consent to Search; The Behavior Assessment System for Children, Second Edition, completed by the Defendant on July 11, 2014; JI-R Data Entry Sheet completed by the Defendant on July 7, 2014; Milton Adolescent Clinical Inventory completed by the Defendant on July 7, 2014; Minnesota Muliphasic Personality Inventory – Adolescent completed by the Defendant on July 11, 2014; RSTI Rating Form completed by Dr. Taylor on July 11, 2014; SAVRY Rating Form completed by Dr. Taylor on July 11, 2014; Trauma Symptom Checklist completed by Dr. Taylor on July 11, 2014; Youth Level of Service/Case Management Inventory 2.0 completed by Dr. Taylor on July 11, 2014; *Police Criminal Complaint* from the underlying incident; *Transcript of Proceedings* of the February 19, 2014 Preliminary Hearing before Magisterial District Judge Kelly L. Rock; Letter from Nichole Stroup dated March 4, 2014; PSP Request for Forensic Analysis dated January 28, 2014; Call Summary Report from the Mifflinburg Police Department; *Affidavit of Probable Cause* by Trooper Donn Reid in support of request for the issuance of a Search Warrant, dated January 26, 2014; *Application for Search Warrant* by Trooper Donn Reid, dated January 26, 2014; *Return of Service and Inventory*, dated January 26, 2014 (search) and January 27, 2014 (return); NMS Labs Toxicology Report issued January 29, 2014; Pennsylvania Sentencing Guidelines for the Defendant; Video Recording of the scene from the underlying incident; Defendant's Exhibit 6 – *General Investigation Report* by Trooper Eric R. Campbell; Defendant's Exhibit 7 – *Ballistics* report dated May 30, 2014 from the Pennsylvania State Police Bureau of Forensic Services; Defendant's Exhibit 8 – Supplemental Investigation Report by Cpl. Christopher Pushart (PSP) dated March 10, 2015; Defendant's Exhibit 9 – Graph of audio analysis prepared by Cpl. Pushart; Commonwealth's Exhibit 1 – MVR from the underlying incident from Trooper Quinn's patrol cruiser; Commonwealth's Exhibit 2 – *Transcript of Proceedings* of the February 19, 2014 Preliminary Hearing before Magisterial District Judge Kelly L. Rock; and Commonwealth's Exhibit 3 – CD-R containing the audio recording of the January 26, 2014 interview of the Defendant by Troopers Rush and Reed.

8

not elaborate as to how the factors were addressed, the court will address them below.

a) *The Impact of the Offense on the Victim or Victims*[27]

The primary victim in this matter was Pennsylvania State Police Trooper Michael Quinn.[28] Trooper Quinn testified that he has had trouble sleeping, was in a continued state of shock, was placed on temporary leave, had difficulties with his normal routine at home, had difficulty relating to people, ended his relationship with his fiancé, and attended counseling. *See Decertification Tr.* at 7 – 15. This court found that the extraordinarily traumatic offense committed by the Defendant had a significant negative impact on a Pennsylvania State Police Trooper; therefore, this factor weighed heavily in favor of denying decertification.

b) *The Impact of the Offense on the Community*[29]

In the instant matter, the Defendant stole a firearm and a vehicle, drove that vehicle for a few hours, and was pulled over by Trooper Quinn for a relatively minor traffic offense. During this routine traffic stop, the Defendant grabbed the stolen firearm and

---

[27] 42 Pa.C.S. § 6355(a)(4)(iii)(A).
[28] The other victims were the victims of the theft related charges.
[29] 42 Pa.C.S. § 6355(a)(4)(iii)(B).

fired _multiple_ shots at Trooper Quinn. Any time a law enforcement officer is shot at during the ordinary course of their employment, especially during something as mundane as a routine traffic stop in broad daylight, there is a tremendous negative impact on the community.

In our civilized society, the average law-abiding citizen will have little, if any contact, with the criminal justice system. To most of these individuals, uniformed police officers are the only "face" of the criminal justice system they will ever see. An attempt by another fellow citizen to murder a uniformed police officer, in broad daylight along a highly traveled interstate, as in this case, has at least caused uncertainty and apprehension in the community. Such actions are, fortunately, rare in this county. Citizens rely every day on police officers to protect them, maintain order, and generally help insure that they can live their lives in a peaceable manner. It is axiomatic that an attack by a fellow citizen on the symbol of that peace and security causes, and has caused, the faith of other citizens to be shaken. While this impact is not capable of finite measurement, it is readily detected by common sense and everyday living in a civilization governed by the law; the Defendant's

10

actions in this case were governed by anarchy. Therefore, this court found this factor weighed heavily in favor of denying decertification.

c) *The Threat to the Public or any Individual Posed by the Child*[30]

The Defendant's actions in this matter constituted a severe disregard of the basic covenants of a civilized society. The Defendant's actions threatened the life of, and emotionally scarred Trooper Quinn. The fact that the Defendant would steal a car and gun, then on the precipice of being caught, attempt to murder a police officer showcases the danger the Defendant poses to the public. When an individual chooses to murder a law enforcement officer, the decision and subsequent act are tantamount to conclusive proof that the individual is dangerous to all citizens. If a person such as the Defendant is unafraid to fire a weapon at a uniformed, armed, and trained police officer along a busy stretch of highway in broad daylight, they possess little, if any, inhibition that would prevent them from violently victimizing other unarmed,

---

[30] 42 Pa.C.S. § 6355(a)(4)(iii)(C).

11

private citizens. Therefore, the court found this factor weighed heavily in favor of denying decertification.

   d) *The Nature and Circumstances of the Offense Allegedly Committed by the Child*[31]

As discussed above, the offenses the Defendant committed were extremely reprehensible[32] and the circumstances surrounding the incident only serve to enhance the inexcusable nature of the acts. Therefore, the court found that this factor fell heavily in favor of denying the decertification motion.

   e) *The Degree of the Child's Culpability*[33]

The Defendant was the sole perpetrator, stole a firearm and a vehicle, and when he was pulled over for a routine traffic stop, proceeded to fire multiple rounds at a Pennsylvania State Police Trooper. The Motor Vehicle Record (MVR) details the exact nature of the stop in question. *See* Defendant's Ex. 5. The video makes it abundantly clear that the Defendant, unprovoked, fired multiple shots at a uniformed State Police Trooper. There is no question that the Defendant was singularly culpable for his actions. The

---

[31] 42 Pa.C.S. § 6355(a)(4)(iii)(D).
[32] *See generally* Discussion *supra* Part I(a) – (c).
[33] 42 Pa.C.S. § 6355(a)(4)(iii)(E).

12

Defendant was in a stolen vehicle with a stolen firearm and utilized the firearm during a routine traffic stop in an attempt to escape justice. Therefore, this court found that this factor weighed heavily in favor of denying decertification.

> *f)  The Adequacy and Duration of Dispositional Alternatives Available under this Chapter and in the Adult Criminal Justice System*[34]

While Amy Taylor testified that the Defendant "is amenable to treatment, supervision, and trauma within the juvenile justice system," there was little evidence of what treatment options would be available under the juvenile justice system that would not be available under the adult criminal justice system. Additionally, there was little evidence to establish that the adult criminal justice system could not provide adequate treatment to the Defendant. Furthermore, the Defendant was 17 years and 4.8 months old at the time of the decertification hearing; therefore, there would only be an extremely short period of time for the Defendant to receive services in the juvenile justice system. The Court considered this factor in its decision.

---

[34] 42 Pa.C.S. § 6355(a)(4)(iii)(F).

13

*g) Whether the Child is Amendable to Treatment, Supervision or Rehabilitation as a Juvenile by Considering the Following Factors: Age, Mental Capacity, Maturity, the Degree of Criminal Sophistication Exhibited by the Child; Previous Records, if any; the Nature and Extent of any Prior Delinquent History, Including the Success or Failure of any Previous Attempts by the Juvenile Court to Rehabilitate the Child; Whether the Child can be Rehabilitated Prior to the Expiration of the Juvenile Court Jurisdiction; Probation or Institutional Reports, if any; and any other Relevant Factors*[35]

During the court's analysis of the decertification factors, this court considered the factors listed at 42 Pa.C.S. § 6355(a)(4)(iii)(G). This court noted that the Defendant was approximately sixteen years old at the time of the incident, had no prior record, appeared mature, and possessed an average intelligence for his age. Furthermore, Dr. Amy Taylor testified that she believed that the Defendant is mature and has an average intelligence for his age. *See Tr.* at 76. While Amy Taylor testified that the Defendant "is amenable to treatment, supervision, and trauma within the juvenile

---

[35] 42 Pa.C.S. § 6355(a)(4)(iii)(G).

14

justice system;" the court did not find this to be wholly persuasive in the instant matter. *See Tr.* at 41 – 42.

At the time of the decertification hearing, the Defendant was 17 years and 4.8 months old, and could only be under the care of the juvenile justice system for approximately three years. *See Tr.* at 4, 42. Dr. Taylor testified that she believed that he <u>may</u> be able to be treated during that timeframe. *See Tr.* at 43 (emphasis added). Additionally, Dr. Taylor testified that she believed that the Defendant "would benefit for the lengthy period of time [in placement], mostly because I think he needs structure, and you know, a caring consistent treatment process." *Tr.* at 78 – 79. As part of Dr. Taylor's testimony, she discussed the Defendant's diagnosis of Post-Traumatic Stress Disorder (PTSD) as it stems from a childhood trauma. This court considered this information in its decision.

Additionally, Richard Ackerman of the Franklin County Juvenile Probation Department testified regarding a number of different programs that could be available, the level of security at those programs, and the uncertainty regarding the Defendant's placement in such programs.

15

This court had concerns that if certification were granted, there would be insufficient time for the Defendant to be under the care of the juvenile justice system. The offenses the Defendant were charged with are some of the most severe in the law. Therefore, the Court found that this factor weighed slightly in favor of granting certification; however, based upon all of the factors contained in the statute, this court found that the Defendant failed to meet his burden that decertification was in the public interest.

II.    Whether the Court abused its discretion in sentencing the Defendant to an Aggregate Sentence of 168 to 344 months in a State Correctional Institute.

The reasons for the *Order* appealed from in this case were adequately set forth in this court's *Opinion* and *Order of Court* filed of record on June 15, 2016. A copy is attached for ease of review. It is respectfully requested that the Superior Court affirm in all respects.